IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TERRI M.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-125**    (Fam. Ct. Marion Cnty. No. FC-24-2023-D-267)

**BRANDON M.,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Terri M.[1] appeals the Family Court of Marion County's February 22, 2024, final divorce order, which held that she must pay Respondent Brandon M. $11,516.37 for his share of equitable distribution. Brandon M. responded in favor of the family court's decision.[2] Terri M. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, and reversed, in part.

Terri M. ("Wife") and Brandon M. ("Husband") were married on July 7, 2017. Two children were born of the marriage. Throughout the marriage, Husband subjected Wife to acts of physical violence and inflicted damage to the parties' vehicle and marital home. Husband was incarcerated for his acts of physical violence at the time of the final divorce hearing, which was held on February 20, 2024. During the hearing, Wife asked the family court to account for Husband's deliberate destruction of their marital property—a 2020 GMC Acadia and the parties' marital home—by assessing the destruction and adjusting equitable distribution accordingly.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last names by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Terri M. is represented by James L. Lindsay, Esq., and Molly A. Russell, Esq. Brandon M. is represented by David B. DeMoss, Esq.

1

The 2020 GMC Acadia had a lien balance of $24,895 at the time of the parties' separation. However, during the hearing, the parties disagreed as to the vehicle's current value. Wife argued that Husband, in a fit of anger, purposely drove the Acadia into their other vehicle, ripping off part of the Acadia's grill and denting the hood, thus, causing a reduction in the vehicle's value. Wife testified that the Kelly Blue Book value of the Acadia was $17,000 due to the vehicle being in "fair" condition and provided pictures of the damage to the vehicle. Husband, by counsel, argued that the Acadia was in "great" condition and provided documentation of a Kelly Blue Book value for the Acadia of $25,034. There is no dispute that damage to the Acadia caused by Husband had not been repaired (at the time of the hearing) and Wife testified that she did not seek an estimate regarding the repair costs because she could not afford to have it repaired. The family court found Husband's documentation to be more credible than Wife's testimony and pictures.

Regarding the marital home, the family court found that it was Wife's separate property, the monthly mortgage payments were $422.28, and that the parties paid $31,248.72 toward the mortgage during the marriage. Wife presented multiple photos of the damage done to the home, most of which depicted drywall damage. Wife testified that Husband punched holes in the walls of the home, threw her through a wall, kicked in both the bathroom door and front door, punched her in the face (which caused her to bleed on the carpet), damaged door frames, and threw various items at her, which hit and damaged the walls. Husband admitted to causing some damage to the marital home but also testified that he made various repairs to the home. Wife offered no evidence of the cost to repair the damage depicted in the photographs she presented. Based upon the evidence before it, the family court held that Husband was entitled to $15,624.36 of the marital home's equity as his share of equitable distribution.

On February 21, 2024, Wife filed a proposed equitable distribution analysis, which included an analysis of Husband's marital waste, wherein she argued that she should be credited $7,236.00 for the vehicle's damage, which reflects the difference in the Kelly Blue Book values of the Acadia in "fair" versus "great" condition. Wife also requested a further reduction in Husband's share of equitable distribution due to the damage he caused to the marital home.

The final order was entered by the family court on February 22, 2024. In that order, the court determined that Wife owed Husband $11,516.37 as his share of equitable distribution and ordered her to pay at least $100 per month to Husband during his incarceration. Wife was given two years from the date of Husband's release from incarceration to pay the remaining balance of the $11,516.37. The family court valued the Acadia to be in "great" condition and did not consider Wife's marital waste argument regarding the marital home. It is from the February 22, 2024, order that Wife now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife raises two issues. First, she contends that the family court erred in calculating the fair market value of the 2020 GMC Acadia because the court failed to consider undisputed evidence of the vehicle's damaged physical condition. We agree. The record establishes that Wife provided testimonial evidence of how the vehicle was damaged, and the specific damages it sustained. Further, she provided photographs showing damage. Husband merely provided a Kelly Blue Book estimated value of the vehicle with his counsel's assistance while he was incarcerated and stated that he believed the vehicle to be in "great" condition. Further, Husband did not deny damaging the vehicle. *See* Syl. Pt. 2, *Evans v. Mut. Min.,* 199 W. Va. 526, 485 S.E.2d 695 (1997) (holding that, under the West Virginia Rules of Evidence, a lay witness is qualified to give lay testimony as to the value of destroyed or damaged personal property based on his or her personal knowledge). Because Wife provided undisputed evidence that Husband damaged the vehicle, offered pictures showing the extent of damages sustained, and provided a Kelly Blue Book value for the vehicle in a "fair" condition, we hold that the family court committed clear error with respect to the fact findings affecting the value of the vehicle and reverse as to this assignment of error, with directions for the family court on remand to use Wife's suggested value for the 2020 GMC Acadia.

In her second assignment of error, Wife asserts that the family court abused its discretion in its equitable distribution findings by failing to properly apply the marital waste provisions of West Virginia Code § 48-7-103[3] after Husband admitted to engaging in

---

[3] West Virginia Code § 48-7-103(4) (2001) states:

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:
. . .
(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of the

conduct that reduced the value of the parties' marital home. We disagree. Here, although Wife testified as to the extent of damage that Husband caused to the marital home and provided pictures, Husband testified that he made some repairs to the home and that Wife's first husband caused some of the alleged damage to the home. Because Wife provided no receipts or estimates showing the cost of repairs, or any other documentation that showed the decrease in the home's value, the family court had no way to calculate a reduction in Husband's share of equitable distribution.[4] Therefore, we find no error in the family court's ruling as to equitable distribution of the parties' marital home.

Accordingly, we affirm, in part, and reverse, in part, the family court's February 22, 2024, final divorce order and remand this matter to family court with directions for the court to use Wife's suggested value for the 2020 GMC Acadia when determining equitable distribution between the parties.

Affirmed, in part, and Reversed, in part, with Directions.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.

[4] Although we affirm the family court's ruling as to this assignment of error, we note that there are other civil remedies available to Wife outside the jurisdiction of family court. For example, West Virginia Code § 50-2-1 (2016) directs that "[e]xcept as limited herein and in addition to jurisdiction granted elsewhere to magistrate courts, [magistrate] courts shall have jurisdiction of all civil actions wherein the value or amount in controversy or the value of property sought, exclusive of interest and cost, is not more than $10,000."